1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CARLOS ESCAMILLA,                         CASE NO. 05-CV-1936-H
                                              (BLM)
12                          Petitioner,
                                              **ORDER DENYING**
13          vs.                               **PETITION FOR WRIT OF**
                                              **HABEAS CORPUS**
14   GEORGE GIURBINO, Warden,

                              Respondent.
15

16          Petitioner Carlos Escamilla is a state prisoner serving a life sentence without

17   possibility of parole and an additional one year sentence to run consecutively.

18   Proceeding *pro se*, he filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

19   § 2254 on October 11, 2005.  (Doc. No. 1.)  In his petition, he challenges the results of

20   a prison disciplinary proceeding.   Respondent filed an answer to the petition on

21   February 10, 2006.  (Doc. No. 9.)  On February 28, 2006, Petitioner filed a traverse.

22   (Doc. No. 12.) Magistrate Judge Major issued a Report and Recommendation ("R&R")

23   on April 27, 2006, recommending that the Court deny Petitioner's writ for habeas

24   corpus relief without prejudice to permit him to file an amended complaint under 42

25   U.S.C. § 1983.  (Doc No. 13.)  Neither party filed any objections to the R&R.  After

26   careful consideration, the Court finds that Petitioner may bring his claims in a habeas

27   proceeding, and the Court DENIES the petition with prejudice.

28   **/ / / /**

Dockets.Justia.com

1

## **Background**

2   A state court jury convicted Petitioner of first degree murder under California

3   Penal Code § 187(a), and it found that he personally used a dangerous weapon within

4   the meaning of California Penal Code § 12022(b). (California Court of Appeal's Order

5   Affirming Conviction, Lodgment 11 at 2.)[1] Petitioner was sentenced to life in prison

6   without possibility of parole, plus one year to run consecutively for personal use of a

7   dangerous weapon. (Id.; Los Angeles County Superior Court Minute Order, Lodgment

8   1 at 1.)

9   On November 21, 2003, a group of inmates attacked a group of prison staff

10  members. (Petition at 2; Rules Violation Report, Lodgment 2 at 1.) Correctional

11  Officer Silva identified Petitioner as part of the group of prisoners involved in the

12  assault. (California Court of Appeal Order Denying Petition for Writ of Habeas

13  Corpus, Lodgment 8 at 1.) Petitioner was charged with a rules violation under

14  California Code of Regulations, title 15, § 3005(c), for attempted murder of a peace

15  officer. (Id.) On December 12, 2004, a senior hearing officer found Petitioner not

16  guilty of attempted murder of a peace officer, but found him guilty of the lesser

17  included offense of participating in a riot. (Id.) The hearing officer assessed a 90 day

18  forfeiture of credits and referred Petitioner to the Institutional Classification Committee

19  with a recommendation for housing in the Segregated Housing Unit. (Id. at 1-2.) The

20  chief disciplinary officer affirmed the hearing officer's findings and disposition. (Id.

21  at 2.)

22  Petitioner filed an administrative appeal in which he argued that the decision was

23  not supported by the evidence. (Petition, Ex. A (Inmate Appeal Form) at 1-3.) In

24  particular, he argued that he was Salvadoran and was not involved in the Southern

25  Mexican prison gang inmate attack, he was not in the vicinity of the attack, and unlike

26  the other inmates involved in the attack, he suffered no injuries. (Id. at 2-3.) The Chief

27  _____

28  [1] This Court presumes the state court's factual determinations are correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

1    Deputy Warden at Calipatria State Prison denied his appeal.  (Second Level Appeal

2    Response, Lodgment 3 at 3-6.)

3         Following denial of his administrative appeal, Petitioner filed a petition for a writ

4    of habeas corpus in the Imperial County Superior Court.  (Petition for Writ of Habeas

5    Corpus Filed in Imperial County Superior Court, Lodgment 5.)  In his petition, he

6    alleged that his due process rights were violated because the evidence was insufficient

7    to support the disciplinary conviction and because prison officials improperly denied

8    his request for videotape and photographs of the riot to demonstrate his position at the

9    time of the attack.  (Id.)  The Imperial County Superior Court denied the petition.

10   (Imperial County Superior Court Order Denying Writ of Habeas Corpus, Lodgment 6.)

11        Next, Petitioner filed an appeal of the denial of the writ in the California Court

12   of Appeal.  (Petition for Writ of Habeas Corpus Filed in California Court of Appeal,

13   Lodgment 7.)  Because state case law mandates that a petitioner can only seek review

14   of his claims by filing a new petition in the Court of Appeal, the court treated the appeal

15   as an original proceeding raising the same issues as the petition filed in the Superior

16   Court.  (California Court of Appeal Order Denying Petition, Lodgment 8 at 2-3.)

17   Reaching the merits of the petition, the California Court of Appeal denied the petition,

18   stating:

19        Escamilla did not raise the claim that the hearing officer improperly
         denied his request for videotape and photographs in the administrative
20        appeal.  The claim may not be raised in the first instance by way of habeas
         corpus.
21        "[T]he requirements of due process are satisfied if some evidence
         supports the decision by the prison disciplinary board to revoke . . .
22        credits.  This standard is met if 'there was some evidence from which the
         conclusion of the administrative tribunal could be deduced. . . . .'
23        [Citation.]  Ascertaining whether this standard is satisfied does not require
         examination of the entire record, independent assessment of the credibility
24        of witnesses, or weighing of the evidence.  Instead, the relevant question
         is whether there is any evidence in the record that could support the
25        conclusion reached by the disciplinary board.    [Citation.]"
         (Superintendent v. Hill (1985) 472 U.S. 445, 455-456.)  "Some evidence"
26        supports the determination that Escamilla participated in the riot because
         the correctional officer positively identified him as part of the group of
27        inmates assaulting the staff.
         The petition is denied.
28   (Id. at 3.)

1  Petitioner filed a petition for writ of habeas corpus in the California Supreme
2  Court, which the court denied without opinion on September 21, 2005. (Petition for
3  Writ of Habeas Corpus filed in California Supreme Court, Lodgment 9; California
4  Supreme Court Order Denying Petition, Lodgment 10.) Subsequently, Petitioner filed
5  this instant petition. Petitioner seeks an evidentiary hearing on the videotape and
6  photographs allegedly taken by prison staff, and he seeks to set aside the disciplinary
7  conviction and expunge all related documentation.

8  **Discussion**

9  **1.    Standard of Review of Magistrate Judge's Report and Recommendation**

10  The district court "may accept, reject, or modify, in whole or in part, the findings
11  or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The Court
12  reviews de novo the magistrate judge's conclusions of law. Britt v. Simi Valley Unified
13  School Dist., 708 F.2d 452, 454 (9th Cir. 1983) overruled on other grounds by United
14  States v. Reyna-Tapia, 328 F.3d 1114, 1121-22 (9th Cir. 2003).

15  **2.    42 U.S.C. § 1983 or Habeas Corpus**

16  The Magistrate Judge did not reach the merits of the petition, as she concluded
17  in the R&R that Petitioner could only bring his claims in a civil rights action pursuant
18  to 42 U.S.C. § 1983. Accordingly, the Magistrate Judge recommended denying the
19  petition without prejudice and allowing petitioner to amend his complaint and allege
20  civil rights violations under § 1983. Neither party objected to the Magistrate Judge's
21  recommendation.

22  In Preiser v. Rodriguez, the Supreme Court addressed whether prisoners seeking
23  to restore good time credits lost during allegedly unconstitutional disciplinary
24  proceedings could proceed under § 1983, or whether a habeas corpus petition under 28
25  U.S.C. § 2254 provided the exclusive remedy. 411 U.S. 475 (1973). Describing the
26  two remedies, the Court held that a § 1983 action is available where a prisoner "is
27  making a constitutional challenge to the conditions of his prison life, but not to the fact
28  or length of his custody." Id. at 499. "[W]hen a state prisoner is challenging the very

1  fact or duration of his physical imprisonment, and the relief he seeks is a determination

2  that he is entitled to immediate release or a speedier release from that imprisonment, his

3  sole federal remedy is a writ of habeas corpus." Id. at 500.  Accordingly, the Court held

4  that, because restoration of the credits would affect the fact or duration of the prisoner's

5  imprisonment, a habeas corpus proceeding was his sole federal remedy.  Id.

6       Extending the reasoning from Preiser, the Supreme Court held in Heck v.

7  Humphrey that, when a state prisoner brings a claim for monetary relief under § 1983

8  and if successful that claim would necessarily render a conviction or sentence invalid,

9  an action for damages may not proceed until the conviction or sentence "has been

10  reversed on direct appeal, expunged by executive order, declared invalid by a state

11  tribunal authorized to make such determination, or called into question by a federal

12  court's issuance of a writ of habeas corpus."  512 U.S. 477, 487 (1994).  Similarly, in

13  Edwards v. Balisok, the Supreme Court reasoned that a habeas corpus action provided

14  the exclusive remedy for a prisoner claiming that procedures used in a disciplinary

15  proceeding resulting in the loss of good time credits were unconstitutional where the

16  petitioner's claim, if successful, would necessarily imply the invalidity of the loss of

17  good time credits.  520 U.S. 641, 647-48 (1997).

18       Examining Supreme Court precedent, the Ninth Circuit held in Ramirez v. Galaza

19  that the favorable termination rule first set forth in Heck only applies "to § 1983 suits

20  that affect the fact or duration of a prisoner's confinement."  334 F.3d 850, 856 (9th Cir.

21  2003).  Further, the court clarified "that the likelihood of the effect on the overall length

22  of the prisoner's sentence from a successful § 1983 action determines the availability

23  of habeas corpus."  Id. at 858 (citing Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir.

24  1997).

25       In his petition, Petitioner seeks to set aside the disciplinary conviction and

26  expunge all related documentation.  Further, he seeks a hearing on the contents of the

27  videotape and photographs allegedly taken by prison staff.  Thus, because Petitioner

28  seeks to set aside the conviction, his petition necessarily seeks to invalidate the loss of

1  good time credits.  In <u>Ramirez</u>, the Ninth Circuit held that a habeas corpus petition was

2  proper where a prisoner sought "expungement of a disciplinary finding from his

3  record."  334 F.3d 850, 858 (9th Cir. 2003).  Similarly, in <u>Preiser</u>, the Supreme Court

4  held that a prisoner must use habeas corpus to challenge the loss of good time credits

5  because that claim necessarily challenges the duration of a prisoner's confinement. 411

6  U.S. at 489.

7      Nevertheless, the Magistrate Judge relied on the following language from

8  <u>Ramirez</u> to conclude that Petitioner must bring his claims in a § 1983 complaint:  "a

9  writ of habeas corpus is proper only where expungement is '*likely* to accelerate the

10  prisoner's eligibility for parole.'"  334 F.3d at 858 (quoting <u>Bostic v. Carlson</u>, 884 F.2d

11  1267, 1269 (9th Cir. 1989) (emphasis by <u>Bostic</u> court)).  According to the Magistrate

12  Judge, because Petitioner is serving a life sentence without possibility of parole, there

13  is no possibility that the expungement of the disciplinary conviction and restoration of

14  good time credits will accelerate or otherwise increase the likelihood that Petitioner will

15  be released from custody.  Therefore, she concluded that a writ of habeas corpus is not

16  available to Petitioner.

17      This Court has found no case holding that habeas corpus jurisdiction is absent

18  where a Petitioner seeks to invalidate a forfeiture of good time credits.  Indeed, in the

19  only Ninth Circuit case to mention the possibility that restoration of good time credits

20  would not reduce a prisoner's sentence, the court instructed the district court on remand

21  to consider whether restoration of the credits could result in a speedier release, and if

22  not, "habeas would no longer be his *exclusive* federal remedy."  <u>Young v. Kenny</u>, 907

23  F.2d 874, 878 n.3 (9th Cir. 1990) (emphasis added).  Thus, the court in <u>Young</u> did not

24  indicate that habeas would be inappropriate in such a situation, but that it would not

25  provide the exclusive remedy.  <u>See also</u> <u>Docken v. Chase</u>, 393 F.3d 1024, 1031 (2004)

26  (habeas and § 1983 are not always mutually exclusive remedies)

27      Further, in <u>Docken</u>, the Ninth Circuit clarified <u>Bostic</u>'s "likely to accelerate the

28  prisoner's eligibility for parole" language upon which the Magistrate Judge relied in

finding habeas jurisdiction lacking here.  393 F.3d at 1031.  According to the <u>Docken</u> court, <u>Bostic</u> used the term "'likely' to identify claims with a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within, the 'core' challenges identified by the [Supreme Court in] <u>Preiser</u>." <u>Id.</u>  Thus, the <u>Docken</u> court stated that, given "the *potential relationship* between [the petitioner's] claim and the duration of his confinement," "we are reluctant to unnecessarily constrain our jurisdiction to entertain habeas petitions absent clear indicia of congressional intent to do so." <u>Id.</u> (emphasis added)  Accordingly, the court held that "when prison inmates seek only equitable relief in challenging aspects of their parole review that, so long as they prevail, *could* potentially affect the duration of their confinement, such relief is available under the federal habeas statute." <u>Id.</u> (emphasis in original).

In this case, Petitioner is serving a life sentence without possibility of parole and an additional sentence of one year to run consecutively.  Thus, Petitioner is still eligible to earn good time credits toward the one year sentence.  Further, if Petitioner's life sentence is ever invalidated or reduced, his good time credits will directly affect his term of imprisonment.  As was the case in <u>Docken</u>, Petitioner's claim "could potentially affect the duration of [his] confinement."  Accordingly, because the loss of good time credits directly affects Petitioner's underlying sentence, he may bring his claims in a petition for habeas corpus.

## 3.    Scope of Review for 28 U.S.C. § 2254 Petitions

Title 28, United States Code, § 2254(a) sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State Court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West Supp. 2003).

This action is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254(d),

1    as amended by the AEDPA:

2        An application for a writ of habeas corpus on behalf of a person in custody
         pursuant to the judgment of a State court shall not be granted with respect
3        to any claim that was adjudicated on the merits in State court proceedings
         unless the adjudication of the claim–

4
             (1) resulted in a decision that was contrary to, or involved an
5            unreasonable application of, clearly established Federal law, as
             determined by the Supreme Court of the United States; or
6
             (2) resulted in a decision that was based on an unreasonable
7            determination of the facts in light of the evidence presented in the
             State court proceeding.
8    28 U.S.C. § 2254(d).

9        A state court's decision may be found "contrary to" clearly established Supreme

10   Court precedent: "(1) if the state court applies a rule that contradicts the governing law

11   set forth in [the Court's] cases or (2) if the state court confronts a set of facts that are

12   materially indistinguishable from a decision of [the] Court and nevertheless arrives at

13   a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-

14   06 (2000).  A state court decision may involve an "unreasonable application" of clearly

15   established federal law, "if the state court identifies the correct governing legal rule

16   from [the Supreme] Court's cases but unreasonably applies it to the facts of the

17   particular state prisoner's case." Id. at 407.  Alternatively, an unreasonable application

18   may be found, "if the state court either unreasonably extends a legal principle from

19   [Supreme Court] precedent to a new context where it should not apply or unreasonably

20   refuses to extend that principle to a new context where it should apply." Id.

21       "[A] federal habeas court may not issue the writ simply because the court

22   concludes in its independent judgment that the relevant state-court decision applied

23   clearly established federal law erroneously or incorrectly . . . .  Rather, that application

24   must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)

25   (internal quotation marks and citations omitted).  "[S]o long as neither the reasoning

26   nor the result of the state-court decision contradicts [Supreme Court precedent,]" the

27   state-court decision will not be "contrary to" clearly established federal law. Id.

28   / / / /

- 8 -

1    Habeas relief is also available if the state court's adjudication of a claim "resulted

2    in a decision that was based on an unreasonable determination of the facts in light of the

3    evidence presented in state court." 28 U.S.C. § 2254(d)(2).  In order to satisfy this

4    provision, Petitioner must demonstrate that the factual finding upon which the state

5    court's adjudication of his claim rests, assuming it rests on a factual determination, is

6    objectively unreasonable.  Miller-El, 537 U.S. at 340 (2003).

7    Finally, where there is no reasoned decision from the state's highest court, the

8    district court "looks through" to the underlying appellate court decision.  Ylst v.

9    Nunnemaker, 501 U.S. 797, 801-06 (1991).  If the dispositive state court order does not

10   "furnish a basis for its reasoning," federal habeas courts must conduct an independent

11   review of the record to determine whether the state court's decision is contrary to, or

12   an unreasonable application of, clearly established Supreme Court law.  See Delgado

13   v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Lockyear,

14   538 U.S. at 75-76); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

15   **4.    Prisoner's Right to Due Process**

16   Like all citizens, prisoners are entitled to protections under the Due Process

17   Clause.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  However, "the fact that

18   prisoners retain rights under the Due Process Clause in no way implies that these rights

19   are not subject to restrictions imposed by the nature of the regime to which they have

20   been lawfully committed." Id.  The Supreme Court held in Wolff that where a prison

21   disciplinary hearing may result in the loss of good time credits, the prisoner must

22   receive (1) advance written notice of the charges against him; (2) an opportunity to call

23   witnesses and present evidence in his defense; and (3) a written statement by the

24   factfinder indicating the evidence relied upon and reasons for the disciplinary action.

25   418 U.S. at 563-67.  An inmate's interest in assuring that the loss of good time credits

26   is not imposed arbitrarily must be "accommodated in the distinctive setting of a prison,

27   where disciplinary proceedings 'take place in a closed, tightly controlled environment

28   peopled by those who have chosen to violate the criminal law and who have been

1  lawfully incarcerated for doing so.'" <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985)

2  (quoting <u>Wolff</u>, 418 U.S. at 561).

3  Procedural due process also requires that the findings of the prison disciplinary

4  board are supported by "some evidence" in the record. <u>Superintendent</u>, 472 U.S. at 454.

5  "Ascertaining whether this standard is satisfied does not require examination of the

6  entire record, independent assessment of the credibility of witnesses, or weighing of the

7  evidence.  Instead, the relevant question is whether there is any evidence in the

8  record that could support the conclusion reached by the disciplinary board." <u>Id.</u> at 455-

9  56.

10  **5.    Petitioner's Claims**

11  Petitioner's only claims are that his due process rights were violated during the

12  disciplinary hearing and that the record contained insufficient evidence to support a

13  finding that he was guilty of participating in a riot.

14  Petitioner has failed to show that the state courts' adjudication of his claim was

15  either contrary to established federal law or unreasonable in light of the facts of the

16  case.  <u>See</u> 28 U.S.C. § 2254(d).  Pursuant to the Supreme Court's standard in

17  <u>Superintendent</u>, the California Court of Appeal determined that there was some

18  evidence to support the disciplinary finding.  (Lodgment 8 at 3.)  As noted by the

19  appellate court, the correctional officer's positive identification of Petitioner as a

20  member of the group of inmates attacking staff sufficiently supported the disciplinary

21  finding.  (<u>Id.</u>)

22  The record also indicates that the prison hearing afforded Petitioner with the due

23  process procedures mandated by <u>Wolff</u>.  As an initial matter, Petitioner was assisted by

24  both a staff assistant and an investigative employee.  (Petition, Ex. 6 (Rules Violation

25  Reports) at 1.)  Regarding notice, Petitioner confirmed at the violation hearing that he

26  received written notice of the charge against him and written notice of the investigative

27  employee report more than twenty-four hours prior to his hearing.  (<u>Id.</u>)        Petitioner

28  was also provided the opportunity to present evidence and call witnesses at his hearing.

1  While he argues that he did not get the opportunity to present witnesses, the documents
2  related to the hearing contradict his position.  (Id. at 1-6.)  The rules violation report
3  indicates that, although he initially indicated a desire to call witnesses, he later declined,
4  as evidenced by his signature next to the indication to not request live witnesses.  (Id.
5  at 4.)  Further, according to the investigative employee's report, although Petitioner did
6  not call live witnesses at the hearing, the investigative employee interviewed several
7  witnesses at Petitioner's direction and asked the questions provided by Petitioner.  (See,
8  e.g., id. at 5-6.)  Petitioner also complains that the hearing officer denied his request for
9  photographs and a videotape of the riot.  The documents describing the hearing do not
10  indicate that Petitioner requested and was denied the evidence at the hearing, and
11  Petitioner did not raise this ground in the administrative appeal.  In any event, in
12  response to a question posed by the investigative employee at Petitioner's direction,
13  Corrections Officer Critendon responded that he did not take Petitioner's picture on the
14  day of the incident.  (Id. at 5.)

15      Finally, the hearing officer's report and subsequent administrative appeals
16  decisions state the evidence relied upon and the reasoning for the decision.  (Id.)  The
17  hearing officer, as well as the administrative appeals officials, based their decisions on
18  evidence presented at the hearing, including the reporting officer's report stating that
19  he observed Petitioner in the group of prisoners assaulting staff in the prison yard.  (Id.
20  at 2-3; Lodgment 3 (Second Level Appeal Response) at 3-7.)  In this context, due
21  process requires only that there be some evidence to support the findings made in the
22  disciplinary hearing.  Superintendent, 472 U.S. at 454.  As demonstrated above, the
23  evidence at the hearing was sufficient to support the findings.  Accordingly, the Court
24  concludes that the California Court of Appeal's decision was neither contrary to, nor
25  an unreasonable application of, federal law.  See 28 U.S.C. § 2254(d).

### Conclusion

27      Based on reasons stated above, the Court finds that Petitioner may bring his
28  claims in a petition for habeas corpus.  After careful consideration, the Court **DENIES**

1  the petition for writ of habeas corpus with prejudice.  The Clerk of Court shall close the

2  case.

3        IT IS SO ORDERED.

4  DATED:  November 2, 2006

5

6        MARILYN L. HUFF, District Judge
       UNITED STATES DISTRICT COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22  **Copies To:**

23  Carlos Escamilla
   J06457-02-126
24  KVSP
   P.O. Box 5104
25  Delano, CA 93216

26  Office of the Attorney General
   110 West A Street
27  Suite 1100
   San Diego, CA 92101-5266
28